# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**In re:**
**LOUIS J. PEARLMAN,** *et al.,*

    **Debtor.**
_____/

**SONEET R. KAPILA, as CHAPTER 11 TRUSTEE for LOUIS J. PEARLMAN, LOUIS J. PEARLMAN ENTERPRISES, INC. AND EACH JOINTLY ADMINISTERED DEBTOR,**

    **Plaintiff,**

**v.**

**PROMIC TECHNOLOGY CO. LTD,**

    **Defendant.**
_____/

Case No. 6:07-bk-00761-ABB
Chapter 11
Jointly Administered

Adv. P. No. -ap-

## COMPLAINT TO AVOID AND RECOVER FRAUDULENT TRANSFERS, FOR DAMAGES AND FOR OTHER RELIEF

Plaintiff, Soneet R. Kapila, as the Chapter 11 Trustee ("Trustee" and/or "Plaintiff") for the bankruptcy estates of Louis J. Pearlman ("Pearlman") in Case No. 6:07-bk-00761-ABB, Louis J. Pearlman Enterprises, Inc. ("LJPE") in Case No. 6:07-bk-01505-ABB and each jointly administered Debtor in Case No. 6:07-bk-00761-ABB (collectively, Pearlman, LJPE and each other jointly administered Debtor, shall be referred to as the "Debtors"), by and through his undersigned counsel, files his Complaint to Avoid and Recover Fraudulent Transfers, for Damages and For Other Relief, against Promic Technology Co., Ltd. (the "Defendant"), and alleges as follows:

## NATURE OF ACTION

1. This is an adversary proceeding seeking (i) to avoid and recover fraudulent transfers made to the Defendant pursuant to Sections 544 and 550 of the Bankruptcy Code,

Chapter 726, Florida Statutes, and Fed. R. Bankr. P. 7001; and (ii) for damages pursuant to Fla. Stat. 726.01 *et al*.

2. This adversary proceeding arises from an extensive Ponzi scheme perpetrated by Louis J. Pearlman ("Pearlman") and various entities owned and/or operated by him over a period of more than twenty years. During the course of the fraud, Pearlman was successful in raising millions of dollars based on false representations about two affiliated companies, Transcontinental Airlines Travel Services, Inc., and Transcontinental Airlines, Inc. (collectively the Transcontinental Entities").[1] Despite Pearlman's representations to the contrary, they had no true business existence or revenues.

3. Pearlman offered fraudulent investments in connection with the Transcontinental Entities. As alleged herein, the monies raised from investors was used for Pearlman's benefit and to further the Pearlman Ponzi scheme including fraudulent transfers made to the Defendant.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. §§ 1334 and 157.

5. Venue is proper in this district under 28 U.S.C. § 1409.

6. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157 (b) (2) (A), (B), (H) and (0).

## PARTIES

7. Plaintiff is the court-appointed Chapter 11 Trustee for the bankruptcy estates of Pearlman, LJPE and each other jointly administered Debtor.

---

[1] On March 4, 2008, Pearlman entered into a Plea Agreement (6:07-cr-000097-GKS-DAB, Dkt. No. 39) pursuant to Fed. R. Crim. P. 11(c) with the United States of America, by Robert E. O'Neill, United States Attorney for the Middle District of Florida, where by he admitted to the facts of the Ponzi scheme, detailed herein.

8. The Defendant is an entity of unknown origin holding a bank account into which proceeds of the Pearlman Ponzi scheme were transferred.[2]

9. The International Transfer (detailed herein) originated from the United States bank account owned by the debtor. There is no apparent business purpose for the transfer and the Trustee does not believe that the Defendant received the International Transfer in good faith.

10. Based upon the facts alleged herein, the Defendant is subject to the personal jurisdiction of this Court pursuant to applicable federal law and/or, to the extent applicable, Section 48.193 of the Florida Statutes. Specifically, the Defendant availed itself to the jurisdiction of this court by willingly receiving the International Transfer which originated in the United States in furtherance of the Debtor's attempts to hinder, delay, and defraud creditors.

11. Based upon the facts alleged herein, maintaining jurisdiction over the Defendant comports with the due process standards of the United States Constitution because at all times material hereto the Defendant had and maintained "minimum contacts" with the United States by and through, among other contacts, its transactions and communications with Louis J. Pearlman and the Pearlman Entities with respect to the International Transfer, such that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. This adversary proceeding arose from these transactions which had a substantial connection with this forum.

12. The Defendant's conduct in connection with the United States is such that it would reasonably anticipate being hailed into a court in the United States.

## FACTUAL BACKGROUND

13. On March 1, 2007 (the "Pearlman Petition Date"), Tatonka Capital Corporation, Integra Bank, National Association, American Bank of St. Paul, and First National Bank & Trust

---
[2] Upon information and belief, the Defendant may be a sound equipment manufacturing company based in China.

3

Company of Williston (collectively, the "Petitioning Creditors") filed against Pearlman an involuntary petition under Chapter 11 of the Bankruptcy Code.

14. On March 8, 2007, the Petitioning Creditors filed an emergency motion for appointment of a Chapter 11 trustee (Dkt. No. 6; the "Emergency Motion"). As set forth in the Emergency Motion, upon information and belief, Pearlman has been involved in one of the largest "Ponzi" schemes in the State of Florida based, among other things, on fraudulent investments offered in connection with TransContinental Airlines, Inc. ("TCA"), an entity controlled by Pearlman.

15. On March 16, 2007, this Court entered its Order Directing the Appointment of Chapter 11 Trustee for Pearlman (Dkt. No. 26).

16. On March 27, 2007, the United States Trustee filed its Notice of Appointment of Trustee (Dkt. No. 39), appointing Plaintiff as the Chapter 11 Trustee for Pearlman.

17. On March 30, 2007, this Court entered its Order Approving the Chapter 11 Trustee's appointment (Dkt. No. 46).

18. On April 5, 2007, this Court entered its Order for Relief for Pearlman (Dkt. No. 60; the "Order for Relief").

19. On April 18, 2007, LJPE filed a voluntary petition under Chapter 11 of the Bankruptcy Code in Case Number 6:07-bk-01505-ABB (the "LJPE Petition Date")(together with the Pearlman Petition Date, as applicable, the "Petition Date"). Thereafter, on motion for the appointment of a trustee filed by the Office of the United States Trustee, the Court, on May 8, 2007, entered an Order Directing the Appointment of a Chapter 11 Trustee (LJPE Dkt. No. 12). On May 25, 2007, the Court entered an order approving the selection of Soneet R, Kapila as the Chapter 11 trustee for LJPE (LJPE Dkt. No. 17).

20. On July 31, 2007, this Court entered its Order pursuant to which the Pearlman bankruptcy case, the LJPE bankruptcy case and the bankruptcy cases of the other Debtors were jointly administered with the Pearlman bankruptcy case designated as the lead case (Pearlman Dkt. No. 228; LJPE Dkt. No. 55).

## THE EISA PROGRAM SCHEME

21. From as early as 1989 through January 2007, Trans Continental Airlines, Inc. ("TCA"), by and through its president, Pearlman, and other control persons of TCA, raised in excess of $300 million from hundreds of investors nationwide. TCA, through Pearlman, and others, raised such funds by offering investors the "opportunity" to invest their funds into the "Employee Investment Savings Account" program allegedly maintained by TCA (the "EISA Program").

22. Upon information and belief, the EISA Program was touted by Pearlman and others as being available solely to employees of TCA and their family and friends. However, upon information and belief, the investors solicited by Pearlman and others were not, with a few exceptions, employees or family members of employees of TCA.

23. Upon information and belief, Pearlman and others promised prospective and existing investors in the EISA Program that their investments would yield above-market interest rates because such monies were being invested through TCA, which was promoted as a financially strong and successful charter airline with a net worth of over $100 million. Upon information and belief, Pearlman and others represented to existing and prospective investors in the EISA Program that TCA had significant banking relationships which enabled TCA to achieve these higher than market rates of return on its investments, which higher rates of return could be passed on to the investors.

24. Upon information and belief, Pearlman and others made several representations to investors and prospective investors in the EISA Program concerning the safety of the investments, including without limitation, that the funds (i) were secure and deposited in individual bank accounts with unique account numbers at United States financial institutions, (ii) were insured by the Federal Deposit Insurance Corporation, (iii) were re-insured by either Lloyds of London or AIG Insurance.

25. In actuality, the funds were not deposited into individual bank accounts for the investors with individual account numbers. Moreover, the funds did not have FDIC insurance protection, and there was no re-insurance from Lloyds of London, AIG Insurance or any other insurance company.

26. Rather, the funds received from investors in the EISA Program were deposited into various checking accounts held in the name of TCA and thereafter disbursed to various parties as opposed to remaining on deposit for such investors.

27. Upon information and belief, certain of the funds transferred by investors into the EISA Program were used to repay prior investors and/or pay interest to prior investors in the EISA Program.

28. In fact, at Pearlman's plea hearing on March 4, 2008, before the United States District Court for the Middle District of Florida, in his criminal case, Pearlman admitted that the EISA Program was a "Ponzi" scheme in that the money invested in the EISA Program was used to pay back earlier investors, for working capital, for Pearlman's personal expenses and to pay brokers.

29. Upon information and belief, at all relevant times herein, Pearlman and others knew that the representations being made to the investors in the EISA Program concerning such

investments were false and misleading and were intended to induce such investors into transferring their monies to TCA.

## THE BANK FRAUD SCHEME

30. From as early as 2003 through January 2007, Pearlman, both individually and through various entities owned and/or controlled by Pearlman, borrowed in excess of $150 million in both secured and unsecured loans from numerous banks and financial institutions nationwide.

31. Upon information and belief, Pearlman created and circulated, including through and with the substantial assistance of others, offering memoranda and similar due diligence materials to one or more of the banks in an effort to convince the banks to make such loans.

32. The due diligence materials that were prepared and delivered to the banks in support of the applications for the loans included, without limitation, financial statements for TCA and other of Pearlman's companies, financial statements of Pearlman individually, and audited financial statements and related reports from the auditing firm of Cohen & Siegel. Among other things, the financial statements for both TCA and Pearlman listed substantial assets and a corresponding substantial net worth for each of TCA and Pearlman.

33. In fact, all or substantially all of the due diligence materials prepared and delivered to the banks in support of the applications for the loans was false and misleading. Among other things, neither TCA nor Pearlman actually had the substantial assets or net worth evidenced on such financial statements. Moreover, the auditing firm of Cohen & Siegel was a fiction. It simply did not exist. Pearlman admitted to all this at the plea hearing in his criminal case.

## THE FRAUDULENT TRANSFERS TO THE DEFENDANTS

34. Analysis of the Pearlman bank accounts and the bank accounts of various Pearlman Entities revealed transfers in September 2003 totaling $180,000.00 (the "International Transfers") believed to be the proceeds of the Pearlman Ponzi scheme, to the Defendants via international wire transfers.

35. The International Transfers were disbursed from bank accounts owned by debtor, TCA, as follows:

| | | |
|---|---|---|
| Trans Continental Airlines, Inc. | 09/12/03 | 45,000.00 |
| Trans Continental Airlines, Inc. | 09/29/03 | 135,000.00 |

36. The International Transfers were made by or at the direction of the Debtor with the intent to hinder, delay, or defraud creditors.

37. The Debtor was insolvent at the time the International Transfers were made or became insolvent as a result of the International Transfers.

### COUNT I
### ACTUAL FRAUD – AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS UNDER 11 U.S.C. §§ 544(b)(1) AND 550, AND FLA. STAT. §§ 726.105(1)(a) AND 726.108

38. Paragraphs 1 through 37 inclusive are realleged and incorporated herein by reference.

39. This is an adversary proceeding to recover fraudulent transfers pursuant to 11 U.S.C. §§ 544(b)(1) and 550, and FUFTA.

40. Within four years prior to the Petition Date, the Debtor transferred to the Defendant the International Transfers to or for the benefit of the Defendant.

41. Pursuant to 11 U.S.C. §544(b), the Trustee may avoid any transfer of an interest of the Debtor in property transferred to the Defendant that is voidable under applicable law (in

this case under Fla. Stat. §§ 726.105(1)(a) and 726.108) by a creditor holding an unsecured claim.

42. The International Transfers were made by the Debtor with the actual intent to hinder, delay or defraud present and future creditors of the Debtors.

43. There is at least one actual holder of an allowed unsecured claim pursuant to 11 U.S.C. § 502, who would have standing to assert a claim for relief under FUFTA.

44. The International Transfers are avoidable, and should be avoided, pursuant to and under Fla. Stat. §§ 726.105(1)(a) and 726.108 and 11 U.S.C. § 544(b)(1).

45. Pursuant to 11 U.S.C. § 550(a), the recovery of property for the benefit of the Debtors' estates is authorized to the extent that the International Transfer is avoided under 11 U.S.C. § 544(b)(1) and FUFTA.

**WHEREFORE,** the Trustee demands judgment against the Defendant as follows: (i) determining that the International Transfers were fraudulent and avoidable under 11 U.S.C. §§ 544(b) and 550 and FUFTA; (ii) avoiding the International Transfers and entering judgment in favor of the Trustee against the Defendant for the value of the International Transfers pursuant to Section 550 of the Bankruptcy Code, plus pre-judgment interest from the date of the transfers and post-judgment interest, and costs of suit; (iii) disallowing any claim that the Defendant may have against Pearlman or any jointly administered Debtor with Pearlman, including without limitation, pursuant to and as provided in 11 U.S.C. §502(d), and (iv) for such other and further relief as the Court deems just and proper.

**COUNT II**
**CONSTRUCTIVE FRAUD – AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS UNDER 11 U.S.C. §§ 544(B)(1) AND 550 AND FLA. STAT. §§ 726.105(1)(B), 726.106(1), AND 726.108**

46. Paragraphs 1 through 45 inclusive are realleged and incorporated herein by reference.

47. This is an adversary proceeding to recover fraudulent transfers pursuant to 11 U.S.C. §§ 544(b)(1) and 550, and FUFTA.

48. Within four years prior to the Petition Date, the Debtor transferred the International Transfers to or for the benefit of the Defendant.

49. The Debtor received no fair consideration in exchange for the International Transfers.

50. At the time of the International Transfers, the Debtor was insolvent and remained insolvent continuously thereafter.

51. At the time of the International Transfers, the Debtor was engaged in a business or transaction for which its respective remaining property constituted an unreasonably small amount of capital in relation to its business or transaction.

52. At the time of the International Transfers, the Debtor intended to incur, believed or reasonably should have believed that it would incur, debts that would be beyond the Debtor's respective ability to pay as they became due.

53. There is at least one actual holder of an allowed unsecured claim pursuant to 11 U.S.C. § 502, who would have standing to assert a claim for relief under FUFTA.

54. The International Transfers are avoidable under Fla. Stat. §§ 726.105(1)(b), 726.106(1), and 726.108(1)(a), and 11 U.S.C. § 544(b)(1).

55. Pursuant to 11 U.S.C. § 550(a), the recovery of property for the benefit of the Debtors' estates is authorized to the extent the International Transfers are avoided under 11 U.S.C. § 544(b)(1) and FUFTA.

WHEREFORE, the Trustee demands judgment against the Defendant as follows: (i) determining that the International Transfers are fraudulent and avoidable under 11 U.S.C. §§ 544(b) and 550 and FUFTA; (ii) avoiding the International Transfers and entering judgment in

favor of the Trustee against the Defendant for the value of the International Transfers pursuant to Section 550 of the Bankruptcy Code, plus pre-judgment from the date of the transfers and post-judgment interest, and costs of suit; (iii) disallowing any claim that the Defendant may have against Pearlman or any jointly administered Debtor with Pearlman, including without limitation, pursuant to and as provided in 11 U.S.C. §502(d); and (iv) for such other and further relief as the Court deems just and proper.

Dated: April 3, 2009          **GENOVESE JOBLOVE & BATTISTA, P.A.**
Special Counsel for the Trustee
Bank of America Tower
100 S.E. Second Street, Suite 4400
Miami, Florida 33131
Tel. (305) 349-2300
Fax. (305) 349-2310

/s/ Paul J. Battista
Paul J. Battista, Esq, FBN 884162
Gregory M. Garno, Esq., FBN 087505
pbattista@gjb-law.com
ggarno@gjb-law.com